UNION MUTUAL LIFE INSURANCE COMPANY *et al.*

*v.*

ALEXANDER B. CAMPBELL.

*Filed at Ottawa May 18, 1880.*

1. DELIVERY OF A DEED—*of evidence thereof.* The mere act of recording a deed is, of itself, but *prima facie* evidence of its delivery to the grantee, and liable to be rebutted,—and it is successfully rebutted when it is shown the deed was not in the nature of a family settlement, or of a gift to a minor, but

| | |
|---|---|
| 95 | 267 |
| 154 | 208 |
| 95 | 207 |
| 67a | 165 |
| 95 | 267 |
| 181 | 254 |
| 95 | 267 |
| 195 | [1]614 |
| 196 | [1] 76 |
| 196 | 79 |
| 197 | [1]294 |
| 95 | 267 |
| 201 | [1]486 |
| 95 | 267 |
| 111a | [2]504 |
| 95 | 267 |
| 214 | [1]368 |
| 113a | [1]521 |

is intended to confer no benefit upon the grantee, and its execution and recording are wholly unknown to him until after the death of the grantor.

2.  In this case, the owner of certain real estate, anticipating some embarrassments in his business, and desiring to secure his property for the benefit of his family, inquired of a friend if he might convey the property to him, in furtherance of the views mentioned, and the friend assented. Subsequently, the owner executed a deed to that person, acknowledged it, and after the death of the grantor the deed was found in the recorder's office, and it had been recorded. The grantee named in the deed had never been in possession of the deed or of the property, and had no knowledge of the existence of the deed until after the grantor's death. It was held there was no delivery of the deed to the grantee,—the *prima facie* evidence of a delivery afforded by the recording of the deed was fully rebutted by the other circumstances attending the transaction. The permission which the grantee had given, prior to the execution of the deed, that it might be made to him, did not amount to an acceptance of it after it was executed, and that was essential to its proper delivery.

3.  The use of the word "delivered," in the certificate of acknowledgment to the deed, would not operate to show there was a delivery, when the proofs show there was not, in fact, any delivery before the acknowledgment.

4.  TRUST—*what amounts to an acknowledgment.* The grantee in a deed which was never delivered conveyed the property, without consideration, to the widow of the first grantor. This second grantee thereupon executed a deed of trust to another to secure the payment of borrowed money, giving notice, in writing, to the lender of the money, before consummating the transaction, that the property embraced in the deed, in fact, belonged to the minor son and heir at law of her husband, the original grantor in the deed which was never delivered. Upon bill filed by the heir at law to establish a trust in respect of the property, it was considered that such notice given to the grantee in the deed of trust might be regarded as a sufficient acknowledgment of the trust in favor of the heir at law.

5.  CHANCERY—*cancelling of deeds as a cloud upon title—of improvements put upon the land.* On bill filed to establish a trust in certain real estate, and to remove a cloud upon the title of the complainant, it appeared that the father of the complainant executed a deed for the property in controversy, the deed being recorded, but never delivered to the grantee named therein. The deed was not executed upon any contract of bargain and sale, but was really designed as a conveyance in trust, for the benefit of the family of the grantor, but, never having been delivered, it passed no title. The grantee, after the death of that grantor, executed a deed for the same property to the mother of the complainant, who thereupon executed a deed of trust upon the same to secure a sum of money which she had borrowed, and which was used in making valuable improvements in the erection of buildings on the land. The lender of this money was notified by the grantor in the deed of trust, before

the consummation of the transaction, that the property really belonged to the complainant. It was this series of conveyances which the bill sought to have set aside. Upon decreeing, in that regard, in favor of the complainant, it was considered equitable that, to the extent his estate had been reasonably improved, and he himself personally benefited from the money of the grantee in the deed of trust, his estate should be charged with its payment.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

On the 15th of September, 1864, Alexander Campbell and Charlotte C. Campbell, his wife, signed and properly acknowledged a deed conveying the property in controversy to one Alexander McEwen. The consideration expressed in the deed was $3000, but, in fact, no consideration was paid or contracted, the execution of the deed being purely voluntary. It appears that at and prior to the signing and acknowledging of this instrument, Campbell, though not, probably, largely indebted, was involved in a partnership, in regard to the successful termination of which he had serious apprehensions; that he was unwell, and was anticipating the birth of complainant, which occurred shortly afterward, and morbidly distressed lest he would be unprovided for, and anxious to put his property where it would be safe for his family; that McEwen was an intimate friend of his; that the deed was left at the recorder's office and recorded, but that McEwen did not know that such a deed had been made, or recorded, until after Campbell's death, which occurred July 26, 1866, when he was informed thereof by the widow, said Charlotte C. Campbell, and he thereafter found the deed in the recorder's office. At the request of said Charlotte C. Campbell, on the 30th of January, 1867, McEwen conveyed the property to her without any consideration. In the month of May, 1868, Charlotte C. Campbell made a trust deed on the property to Levi D. Boone, to secure the payment of $4000 to the Union Mutual Life Insurance Company of Maine; and on the 15th day of April, 1873, said Charlotte made another trust deed on the property

to said Boone to secure the said insurance company in the sum of $14,000.

Complainant, Alexander B. Campbell, a minor,—being born on the 25th of April, 1865,—by his next friend, filed his bill on the equity side of the Cook circuit court, against the Union Mutual Life Insurance Company of Maine, Levi D. Boone, its agent, and Charlotte C. Campbell, his mother, to establish a trust in the property in controversy, on the ground that the conveyance by Alexander Campbell to McEwen was in trust for his heirs at law. Subsequently, by leave of court, the bill was amended, alleging that the deed of Alexander Campbell was never delivered to or accepted by McEwen, and praying that the same be declared void, and removed as a cloud upon complainant's title. The Union Mutual Life Insurance Company of Maine filed a cross-bill praying for a sale of the property to satisfy the amount due on its deed of trust.

Answers (not under oath) were filed to the original and amended bills and cross-bill, and also replications thereto; and the cause was heard on pleadings and proofs, and the court thereupon found that McEwen paid no consideration for the deed from Alexander Campbell, and that the same was never delivered to him.

And thereupon the solicitor for the complainant asked the court to decree as follows: "That the appellee was entitled to the buildings on the premises; that the appellants should account for all the rents and profits of the estate by them received; that the master should state the account as to the value of the buildings, and the amount of rents received by the appellants, and that appellee should have the right to elect, after the master's report came in, whether he would take the buildings and pay for them any balance there might be above the rents received."

But this the court refused, and decreed as follows:

"It is ordered that said deed is invalid, and that no estate in said premises passed thereby to Alexander McEwen. That on the death of Alexander Campbell the title to said premises

in fee simple descended to the said complainant as the heir at law of said Alexander Campbell, subject to the dower of the said Charlotte C. Campbell.

"It also appearing that Alexander McEwen did, on the 30th day of January, 1867, execute a deed attempting to convey said premises to Charlotte C. Campbell, it is ordered that no estate in said premises passed thereby to said Charlotte C. Campbell.

"It also appearing that Charlotte C. Campbell, on the 15th day of April, 1873, executed a deed of trust of the same premises to Levi D. Boone for the benefit of the Union Mutual Life Insurance Company, it is ordered that no interest or estate against the title of complainant passed to Levi D. Boone.

"It is also ordered that the deed from Alexander Campbell to McEwen, and the deed from McEwen to Charlotte C. Campbell, and the trust deed from Charlotte C. Campbell to Levi D. Boone, are clouds upon complainant's title, and as to him they are canceled and annulled.

"It further appearing, however, that the said Charlotte C. Campbell did, in good faith, relying on the validity of her aforesaid title to the said premises, erect sundry buildings on the said premises, and that the said Union Mutual Life Insurance Company of Maine, further relying on the title of the said Charlotte C. Campbell, did loan her money on the security of said premises, as set forth and alleged in the cross-bill of the said defendant, and that there is now actually due from the said Charlotte C. Campbell to the said Union Mutual Life Insurance Company of Maine, on account of such loan, $——.

"It is further ordered that the complainant shall account to the Union Mutual Life Insurance Company of Maine for the cash value of the permanent improvements on the said premises at the time of filing the bill herein, and that in such accounting the complainant shall be allowed as an off-set two-thirds of the mesne profits or rental of said real

estate, exclusive of the improvements since the defendants or any of them began to receive the rents therefrom, deducting from such rents two-thirds of the taxes assessed on said land without the improvements, and a further sum equal to so much of the rents and profits that have been expended in the maintenance and education of the complainant.

"Referred to a master to take the account, and that if it shall appear that any balance is due the Union Mutual Life Insurance Company, the same shall be paid by complainant within six months, and that on the payment of such balance said buildings shall become the property of complainant. That the cross-bill be dismissed."

The case comes here upon the appeal of the Union Mutual Life Insurance Company of Maine and Levi D. Boone, who have assigned for error:

1. That the court erred in dismissing the cross-bill.

2. That the court erred in granting the prayer of the original bill.

3. That the court erred in finding there was no delivery of the deed from Alexander Campbell to Alexander McEwen.

4. That the decree is not sustained by the evidence.

And, Alexander Campbell, appellee, by his next friend, assigns for cross-errors:

1. That the court below erred in refusing the appellee the decree, in substance, as prayed for and set out in the record.

2. That the court below erred in not allowing appellee to retain the improvements upon the premises in controversy as his own property.

3. The court erred in not allowing the appellee to recover from the appellants all of the mesne profits of the premises received by the appellants.

4. The court erred in not allowing the appellee the right to elect whether to take the improvements up to the coming in of the master's report.

Messrs. KENDALL & BLISS, for the appellants:

In this case all the presumptions are in favor of the validity of the deed from Campbell to McEwen.

The deed was found in the possession of the grantee.

"Where a deed, duly executed, is found in the hands of the grantee, there is a strong implication that it was delivered." *Tunison* v. *Chamblin*, 88 Ill. 387; *Warren* v. *Town of Jackson*, 15 Ill. 241; *Peavey* v. *Shelton*, 18 N. H. 152.

And this presumption can be overcome only by clear and convincing evidence.

The *onus probandi* is upon the one who denies the delivery.

And if his proofs are contradicted by other proofs, so as to leave the matter in doubt, that doubt may be considered in favor of the delivery of the deed. *Carnes* v. *Platt*, 41 N. Y. S. Ct. 435; *Warren* v. *Town of Jackson*, 15 Ill. 241.

The deed was of a beneficial character, and therefore acceptance is presumed. *Rivard* v. *Walker*, 39 Ill. 415; *Church* v. *Gilman*, 15 Wend. 656; *Steward* v. *Weed*, 11 Ind. 92; *Marbury* v. *Brook*, 11 Wheat. 556.

The deed was recorded by the grantor. *Lessee of Mitchell* v. *Ryan*, 3 Ohio St. 380; *Snyder* v. *Lackenour*, 2 Ired. Eq. (N. C.) 360.

Approved in *Ellington* v. *Currie*, 5 Ired. Eq. 21; *Hoffman* v. *Mackall*, 5 Ohio St. 124; *Himes* v. *Keightlinger*, 14 Ill. 469; *Bulkley* v. *Buffington*, 5 McLean, 457; *Mallet* v. *Page*, 8 Ind. 364; *Cecil* v. *Beaver*, 28 Ia. 241.

From acknowledgment. *Bunsley* v. *Atwill*, 12 Cal. 231; *Snyder* v. *Lackenour*, 2 Ired. Eq. 360; *Doe* v. *Knight*, 5 Barn. & Cress. 671.

And this, too, although the grantor retain the deed in his possession.

The acknowledgment of a deed is a judicial act; and it is conclusive of the facts certified to, in the absence of fraud. *Hecter* v. *Glasgow*, 79 Pa. St. 79; *Hill* v. *Bacon*, 43 Ill. 477.

In *Xenon* v. *Wickham*, 2 House of Lords, L. R. 17, 578, where a policy of insurance was expressed to be "signed, sealed

and delivered," it was taken as conclusive against the company that it *was* signed, sealed and delivered, although the company retained possession of it.

But although this presumption, raised by the acknowledgment, may be rebutted, it can not be by the testimony of one witness. *Crane* v. *Crane*, 81 Ill. 165; *Marston* v. *Brettenham*, 76 id. 611; *Kerr* v. *Russell*, 69 id. 666; *Spurgin* v. *Troub*, 65 id. 170.

It is presumed the deed was delivered on the day of its date.

And this must stand till the contrary is proved. *Blake* v. *Fash*, 44 Ill. 302; *Deininger* v. *McConnell*, 41 id. 231; *Jayne* v. *Gregg*, 42 id. 415; *McConnell* v. *Brown*, Litt. Select C. 459.

Intention of grantor will raise presumption of delivery. *Gunnell* v. *Cockerill*, 84 Ill. 319; *Tallman* v. *Cook*, 39 Ia. 402; *Steel* v. *Miller*, 40 id. 406; *Newton* v. *Bealer*, 41 id. 337.

In cases of a voluntary settlement, delivery of the deed is presumed. *Walker* v. *Walker*, 42 Ill. 312; *Sowerbye* v. *Arden*, 1 Johns. Chy. 256; *Clavering* v. *Clavering*, 2 Vern. 473; *Bryan* v. *Wash*, 2 Gilm. 557; *Reed* v. *Douthit*, 62 Ill. 348.

2. As against an innocent purchaser the grantor in a deed who, by his conduct, induces such person to act on the faith of the deed, is estopped from denying its delivery.

And such an estoppel operates against his privies in blood and in estate. *Wood* v. *Seely*, 32 N. Y. 116; *Warren* v. *Town of Jackson*, 15 Ill. 241; *Blake* v. *Fash*, 44 id. 305; *Felton* v. *Nelson*, 27 Barb. 166.

3. For the purpose of making a *prima facie* case in favor of the validity of the execution of deeds, we have our statute regulating conveyances.

A deed can not be said to be "*executed*" until it has been delivered. The delivery completes the execution, and without delivery the execution is incomplete, be the deed never so well written and sealed. 1 Bou. Law Dic. title "Execution;" *Smith* v. *Williams*, 38 Miss. 56; *Cocks* v. *Barker*, 49 N. Y. 110.

The object of the statute is to have placed upon record evi-

dence of everything necessary to the proper execution of a deed; in other words, complete *prima facie* evidence of the existence of a deed and of a conveyance by a deed. Without the statute the signing and sealing are shown by the instrument, leaving the delivery to be otherwise proved; but under the statute *prima facie* evidence of the signing, sealing *and delivery* is perpetuated by a record.

Wherever the words "proof of execution" or "acknowledgment of the execution" occur in this statute, they include the idea of delivery, as well as of the other essential facts. Only by so construing the statute can the certificate of acknowledgment be any protection to innocent purchasers.

4. It is true, in order to the legal operation of a deed, the grantee must assent to receive it. Such assent must be actual, when from the face of the deed the grantee derives no benefit, or it subjects him to the performance of a trust. The assent may be implied, when from the face of the deed it appears to be beneficial to the grantee. And more especially when the deed is found in his possession. *Wiggins* v. *Lusk,* 12 Ill. 132; *Rivard* v. *Walker,* 39 id. 414; *Tunison* v. *Chamblin,* 88 id. 378. See, also, *Kingsbury* v. *Burnside,* 58 Ill. 323; *Butler* v. *Baker,* 3 Coke, 26; *Thompson* v. *Leach,* 2 Vent. 138.

In *Dale* v. *Lincoln,* 62 Ill. 24, the court cite, with approval, the rule as stated by Chancellor Kent, on the same subject. *Lessee of Mitchell* v. *Ryan,* 3 Ohio St. 380; *Tibbals* v. *Jacobs,* 31 Conn. 428; *Cravin* v. *Winter,* 38 Ia. 471.

If the assent be actual it may as well be before the execution of the instrument as afterward. For there is no distinction between the delivery of a deed "to any other person by authority from" the grantee, and the delivery of the deed "to any other person without authority" from the grantee, if the grantee has himself assented to receive it. In neither case is the execution of the deed complete, so as to make it operative in law, until the delivery. Thus, in both cases, the assent is before the execution of the deed. *Steele* v. *Lawrey,* 4 Ohio, 74; *Hoffman* v. *Mackall,* 5 Ohio St. 124; *Monon* v.

*Alexander*, 2 Ired. L. (N. C.) 392; *Lessee of Mitchell* v. *Ryan*, 3 Ohio St. 380; *Thatcher* v. *St. Andrews Church*, 37 Mich. 264.

In the case of the *Lessee of Mitchell* v. *Ryan, supra,* the court say: "It is also certain that simple assent to the conveyance given before its execution is sufficient."

There being assent, actual or implied, it may be delivered to a stranger for and in behalf and to the use of him for whom it is made without authority; and from the mere fact that the delivery is unconditional, and not upon condition, is sufficient proof that the deed was delivered for and in behalf and to the use of the grantee. *Bryan* v. *Wash,* 2 Gilm. 557; *Concord Bank* v. *Ellis,* 10 Cush. 278; *Buffum* v. *Green,* 5 N. H. 71; *Cooper* v. *Jackson,* 4 Wis. 553; *Ellis* v. *Secor,* 31 Mich. 187; *Home Insurance Company* v. *Curtis,* id. 403; *Lessee of Mitchell* v. *Ryan,* 3 Ohio St. 380; *Rathbun* v. *Rathbun,* 6 Barb. 98.

And it is not essential that the grantee should ever have the deed in his possession, or that he should have seen it, or even have any knowledge of the paper itself. *Hatch* v. *Hatch,* 9 Mass. 309; *Foley* v. *Howard,* 8 Iowa, 60; *Lessee of Shirley* v. *Ayres,* 14 Ohio, 307.

It is not necessary that the deed be delivered to the grantee. A delivery to any third person, with the *intent* that the deed shall become presently operative, is sufficient, or, as it is sometimes stated, if the delivery be of such a character as that the grantor loses all control over the deed; and whether the grantor does lose control of the deed, is a legal inference, drawn from the surrounding circumstances. It does not depend upon the fact that the grantor has put the deed where he can not take it into his possession again. See *Gunnell* v. *Cockerill,* 84 Ill. 319; *Rivard* v. *Walker,* 39 id. 414.

A controlling element in determining the delivery, as well as the acceptance of a deed, is the intention of the parties. From all the facts and circumstances, it may be inferred that there was a delivery and acceptance. *Matteson* v. *Cheek,* 23 Ill. 76; *Walker* v. *Walker,* 42 id. 311; *Thompson* v. *Cauder,*

60 id. 247; *McLure* v. *Coldough,* 17 Ala. 89; *Steel* v. *Miller,* 40 Iowa, 402; *Whisler* v. *Shields,* 46 id. 287.

It not appearing that there was dissent, or that the deed was delivered to a stranger upon condition, the delivery was effectual upon the day of the date of the instrument, by legal presumption, or upon the day of its delivery to a third person, *where that fact is shown. Deininger* v. *McConnell,* 41 Ill. 231; *Jayne* v. *Gray,* 42 id. 416; *Merrills* v. *Swift,* 18 Conn. 256.

And there can be no second delivery. So that if the grantor die before the deed comes into the actual possession of the grantee, yet is the deed effective to pass the title. *Bryan* v. *Wash,* 2 Gilm. 557.

When it appears that the object of the deed was to convey the property to the wife for her benefit, or for the benefit of the grantor's family, it will be sustained. *Reed* v. *Douthit,* 62 Ill. 352; *Walker* v. *Walker,* 42 id. 314; *Dale* v. *Lincoln,* 62 id. 24.

Mr. H. T. HELM, for the appellee:

1. The deed from Campbell to McEwen was never delivered by the grantor to the grantee, hence it had no validity.

The deed was executed without the knowledge of the grantee, filed with the recorder without the knowledge of the grantee, and left there for two years, until after the death of the grantor, all this time wholly unknown to the grantee. *Herbert* v. *Herbert,* Breese, 359; *Hulick* v. *Scoville,* 4 Gilm. 176; *Wiggins* v. *Lusk,* 12 Ill. 136; *Kingsbury* v. *Buckner,* 58 id. 310; *Jackson* v. *Phipps,* 12 Johns. 421; *Jackson* v. *Richards,* 6 Cowen, 617; *Maynard* v. *Maynard,* 10 Mass. 456; *Harrison* v. *Phillips Academy,* 12 id. 461; *Derry Bank* v. *Webster,* 44 N. H. 268; *Welsh* v. *Sackett,* 12 Wis. 253; 3 Washburn on Real Property, 293; *Younge* v. *Guilbeau,* 3 Wall. (U. S.) 636; *Fay* v. *Richardson,* 7 Pick. 91; *Fisher* v. *Hall,* 41 N. Y. 423; *Jackson* v. *Leek,* 12 Wend. 107.

2. If the deed of Campbell to McEwen could be held to have any validity, (although it has none,) it created a trust for the grantor and his heirs, and by the conveyance to Charlotte C. Campbell she became the trustee, and of this the appellants had notice in the written statement signed by her, and in all that was said and done between her and Boone when she first applied to them for loans of money. This written statement signed by her is sufficient as a declaration of trust and as notice thereof. Perry on Trusts, 1 vol. 161; 2 Story's Eq. 1198, 1199, and notes; 2 Washburn on Real Property, 430, and notes; 1 Spence's Eq. Jur. 467; *Jackson* v. *Cleveland*, 15 Mich. 102; *Graves* v. *Graves*, 9 Fost. 129; *Phillbrook* v. *Delano*, 29 Maine, 410; *Wandervolgen* v. *Yates*, 5 Selden, 219; *Farrington* v. *Barr*, 36 N. H. 86; *Norfolk* v. *Brown*, 1 Abb. Eq. 381; *Pinney* v. *Fellows*, 15 Vt. 538; *Botsford* v. *Burr*, 2 Johns. Ch. 405.

3. The improvements, although not valuable or permanent, yet being placed on the land of an infant not yet fifteen years old, who was incapable of consenting or contracting in relation thereto, and to whom the law or equity will not impute the obligation of either conscience or contract, became the property of the appellee. *Mathes* v. *Dobscheutz*, 72 Ill. 440; *Davidson* v. *Young*, 38 id. 145; *Kane County* v. *Herrington et al.* 50 id. 232; *Ill. Land and Loan Co.* v. *Bonner*, 75 id. 315.

The appellants having received the rents and profits of the estate of this minor were bound to account for them.

Recovering in ejectment he could at law claim them, *a fortiori* he can claim them in equity. *Benson* v. *Matsdorf*, 2 Johns. 369; *Murphy* v. *Guion*, 2 Hayw. N. C. 145; *Jackson* v. *Loomis*, 4 Cowen, 168; *Hylton* v. *Brown*, 2 Wash. C. C. 165; *Cawdor* v. *Lewis*, 1 Younge & C. Exch. 427; *Russell* v. *Blake*, 2 Pick. 505; *Myers* v. *Sanders*, 8 Dana (Ky.) 65; *Morrison* v. *Robinson*, 31 Penn. St. 456.

The appellee was not only entitled to the mesne profits, but in addition he should recover the reasonable expenses of his

suit to recover the title to his estate and release it from the wrongful clouds of the defendants. *Doe* v. *Perkins*, 8 B. Monr. 198.

5. The court erred in requiring the appellee to pay for the improvements.

The value of the improvements can only be allowed by way of set-off to the mesne profits, *and can not exceed them.* *Yount* v. *Howell*, 14 Cal. 465.

These improvements were not *permanent improvements*, and only such must be accounted for. They were old wooden buildings needing much in repairs, and must soon be removed from the premises.

6. The court erred in refusing to allow the complainant to elect whether he would take the buildings after the master should report the state of the account for rents. The complainant was entitled to know all the facts, and how the account would stand, before he should elect. 2 Story's Equity, sec. 1098.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The principal question to be determined on this record is, was the deed from Alexander Campbell to Alexander McEwen delivered by the former to the latter, and accepted by the latter in the lifetime of the former?

The propositions contended for by appellants' counsel: *First*, That where a deed, duly executed, is found in the hands of the grantee, there is a strong implication that it was delivered. *Second*, That the *onus probandi* is upon the party denying the delivery. *Third*, Where a deed is of a beneficial character an acceptance by the grantee may be presumed— especially where the grantee is a minor and the deed is for the purpose of effecting a voluntary settlement. And, *Fourth*, That the execution and recording of a deed by the grantor is *prima facie* evidence of a delivery,—may all be conceded to be well established law without seriously affecting appellee's

claim, for the deed from Campbell to McEwen was not found in the possession of McEwen, and we are not left to implication or inference to ascertain what were the facts, so far as relates to the delivery to McEwen and his acceptance of the deed.

Mrs. Campbell testifies that, after the death of Campbell, she made search for this deed but was unable to find it; that she then went to McEwen and asked him in regard to it. He denied that he knew anything of the deed or that he had ever heard of it. She then went (on the suggestion of some one that she make search there,) to the recorder's office, and there, on inquiry, found the deed. She says that after the deed was signed and acknowledged by herself and husband she had no further knowledge of it until as above stated. Her husband never mentioned to her what he did with it.

McEwen testifies that about two years before the death of Campbell the latter asked him if he (McEwen) had any objection to his (Campbell's) conveying these lots over to him, and that he replied in the negative, but that Campbell never mentioned the subject to him again, and that he never knew that he had made a deed conveying the property to him until after Campbell's death and when asked about the deed by Mrs. Campbell; that he never paid anything for the lots, and, after Mrs. Campbell found the deed at the recorder's office and notified him that it was there, he went and got it, and subsequently, upon her request, conveyed the property to her. He says he had no information whatever of the execution or existence of this deed in the lifetime of Campbell.

These witnesses are corroborated by the evidence of the notary before whom McEwen's deed to Mrs. Campbell was acknowledged, showing that they then both gave the same version of the matters they now do.

There is no evidence of any direction by Campbell to the recorder in regard to the deed, nor, indeed, of how that instrument got to the recorder's office.

Campbell is shown to have been, at the time the deed was

executed, despondent, low-spirited and reticent, and this gradually increased upon him until shortly before his death, when he was declared insane in consequence of softening of the brain.

The *prima facie* evidence of a delivery of the deed from the fact of recording was liable to be rebutted. *Jackson* v. *Perkins*, 2 Wend. 308; *Gilbert* v. *North American Fire Insurance Company*, 23 id. 43,—and the facts here conclusively rebut that presumption. The deed was not, in fact, delivered, and its existence was not known of by the grantee in the lifetime of the grantor.

In *Jackson ex dem. Eames* v. *Phipps*, 12 Johns. 418, Joseph Phipps being in embarrassed circumstances, in the fall of 1808 went to his brother, Aaron Phipps, and agreed to give him a deed of his farm to secure two notes of about $130, with interest. Joseph Phipps accordingly returned home and executed and acknowledged the deed, and carried it to the clerk's office for recording on the day of its date, without the grantee or any person on his behalf being present, or receiving a delivery of the same. Aaron, the grantee, died in the fall of 1809, and in February, 1810, the defendant received the deed as the son and, probably, heir of Aaron.

The court, per SPENCER, J., said: "Under these circumstances the deed must be considered inoperative. It is requisite in every well made deed that there be a delivery of it. The delivery must be actual by doing something and saying nothing, or else verbal, by saying something and doing nothing; or, it may be by both, but by one or both of these it must be made.   *   *   *   A delivery of a deed, which, we have seen, is essential to its existence and operation, *ex vi termini*, imports that there be a recipient. It would be absurd to hold that a thing was delivered when there was no person to receive; and, in this case, the grantee died without any delivery to him." In the present case we have only to substitute *grantor* for *grantee*, and, obviously, the reasoning is equally applicable and cogent in the one case as in the other.

To the same effect is *Jackson* v. *Richards*, 6 Cowen, 616. See, also, *Fisher* v. *Hall*, 41 N. Y. 416.

So, it is held in Massachusetts the mere recording of a deed is not conclusive evidence of a delivery. *Maynard* v. *Maynard*, 10 Mass. 456; *Samson* v. *Thornton*, 3 id. 275; *Hawkes* v. *Pike*, 105 id. 560; *Welch* v. *Sackett*, 12 Wis. 253.

The doctrine of *Jackson* v. *Phipps, supra*, is approved and followed, in a somewhat analogous case, by the Supreme Court of New Hampshire. *Derry Bank* v. *Webster*, 44 N. H. 267.

In *Young* v. *Guilbeau*, 3 Wall. 641, the same doctrine is announced by the Supreme Court of the United States. In that case, however, the deed was found after the death of the grantor among his papers. The court said: "The delivery of a deed is essential to the transfer of the title. It is the final act, without which all other formalities are ineffectual. To constitute such delivery the grantor must part with the possession of the deed, or the right to retain it. Its registry by him is entitled to great consideration upon this point, and might perhaps justify, in the absence of evidence, a presumption of delivery. But here any such presumption is repelled by the attendant and subsequent circumstances. Here the registry was, of course, made without the consent of the grantee, as he had no knowledge of the existence of the deed, and the property it purported to convey always remained in the possession and under the control of the grantor."

In *Herbert* v. *Herbert*, Breese, 354, the same question was before this court. There the deed was acknowledged and recorded, but found by the administrator after the death of the grantor among his papers, there being no proof of an actual delivery. The court said: "It is most manifest that there could have been no delivery of the deed to the grantee, so as to pass the estate. The act of recording a deed can not amount to a delivery, when there does not appear an assent or knowledge by the grantee of the act. In this case there is not a scintilla of evidence calculated to lead the mind to the belief that the grantee ever knew of the existence of the

deed until after the death of the grantor. There could, then, have been no acceptance by the grantee, because the possession of the deed, if such had been the fact, derived after the death of the grantor could not amount to one, there having been no delivery during the life of the grantor."

The court then quotes, with approbation, from *Jackson ex dem. Eames* v. *Phipps, supra,* after which it is further said: "Indeed, a delivery of a deed, which is essential to its existence and operation, necessarily imports that there should be a recipient. Now, in this case, it would be idle to contend that there was a delivery and reception, when the grantor died before the grantee knew of the existence of the deed. He could not, then, receive that of the existence of which he had no knowledge, nor could there have been a delivery to him without such an acceptance. There had been no act of the grantor, before his death, tantamount to a delivery, much less an actual one. The act of recording does not amount to it, because there appears a total absence of knowledge, on the part of the grantee, of such recording, or even of the existence of the deed, until after the death of the grantor, and it does not appear that he had ever received the deed." It would be impossible to use language more applicable to the facts here than this.

In *Kingsbury* v. *Burnside et al.* 58 Ill. 324, this language is referred to with approbation. And it was there, among other things, said, after alluding to the rule, that the delivery of a deed duly executed and acknowledged to the register, aided by the subsequent possession of the deed by the grantee, might be evidence of a delivery to him: "But, here, the delivery of it at the recorder's office is not aided by a subsequent possession of it by the grantee. There is not only no evidence that he ever had possession of it, or of circumstances tending to that conclusion, but it appears affirmatively that he never had." And this is precisely, as we have seen, the case here.

*Wiggins* v. *Lusk,* 12 Ill. 136, in its enunciation of general principles, follows *Herbert* v. *Herbert, supra.*

But counsel for appellants assume that the same amount of proof is here requisite to show that there was no delivery, that would be requisite to establish that fact, where the grantee is in possession of the property claiming under a deed duly recorded and in his possession. To impeach the delivery, in such a case, would undoubtedly require an amount and character of evidence sufficient to impeach the execution of the deed if attacked in any other respect. But that is not the present case. The grantee here is not shown to be in possession of the property, nor is the deed found in his possession. He is not in possession of the property, and the deed is found in the recorder's office,—and, in this regard, there is no conflict in the evidence.

The mere act of recording, alone, as we have seen, is but *prima facie* evidence of a delivery, and liable to be rebutted; and it is successfully rebutted, as all the cases agree, when it is shown that the deed was not in the nature of a family settlement, or of a gift to a minor, (as to which hereafter,) but is intended to confer no benefit upon the grantee; and its execution and recording are wholly unknown to him until after the death of the grantor.

Again, it is assumed that the present case is different, in principle, from those we have referred to, because the certificate of acknowledgment of the present deed follows the form of our statute, and uses the word "delivered," while in those cases that word does not thus occur.

It is a sufficient answer to this that the proof here is clear by the evidence of two witnesses—that of McEwen and Mrs. Campbell—that the deed was not, in fact, delivered at or before its acknowledgment.

The strongest case seemingly in favor of appellants is *Rivard* v. *Walker et al.* 39 Ill. 413.

In that case a father executed a deed to his minor children, left it with the magistrate before whom it was acknowledged,

directing him to leave it at the recorder's office for record, which the magistrate did. Subsequently the father called upon the recorder, paid him his fee for recording the deed, and told the recorder not to deliver the deed to any one but himself, except in the event of his death, but in that event, to deliver it to the grantees.

Now, it will be noticed, right here, that case is distinguishable from the present in this: Here, the grantee is not a minor—is not related to the grantor—and no directions were given the recorder or any one else in regard to the delivery of the deed. The court in that case refer to *Bryan* v. *Wash,* 2 Gilm. 568, and *Masterson* v. *Cheek,* 23 Ill. 72, and apply the rule recognized by them, that "the law presumes much more in favor of the delivery of deeds, in the case of voluntary settlements, especially when made to infants, than it does between parties of full age, in ordinary cases of bargain and sale," and the court proceed to say: "For, in this case, the bill shows upon its face that the complainant [the grantor] intended to part with the title to his lands for the purpose of placing them where they would be beyond the reach of debts contracted by his spendthrift wife, and secured for the benefit of his children. Both of these objects are avowed in the bill, and yet they would not have been accomplished if the deed, which was made upon a consideration of one dollar, and natural love and affection, had not been intended to take immediate effect. Such being the intention of the grantor, he evidenced and consummated it by delivering the deed to the magistrate without any species of reservation, and directing him to have it recorded. This in behalf of infant grantees, and when explained, as it is by the averment in the bill, will be regarded as an absolute delivery for the benefit of the infants, and the fact that the grantor afterward manifested to the recorder an intent not to part with all control over the deed, can not relieve him from the effect of such absolute delivery."

In *Bryan et al.* v. *Wash et al.,* referred to in that opinion,

the court said: " It must be remembered that the law pre-
sumes much more in favor of the delivery of deeds in case
of voluntary settlements, especially when made to infants,
than it does in ordinary cases of bargain and sale. The same
degree of formality is never required, on account of the great
degree of confidence which the parties are presumed to have
in each other, and the inability of the grantee frequently to
take care of his own interests."

In the other case referred to—*Masterson* v. *Cheek*—the
court said that all the cases referred to on the question of de-
livery were reconcilable on the consideration that the intention
was, and must be, the controlling element, adding: " In a case
like this, where the conveyance was voluntary, and to an infant
who died before he reached an age to assent or accept the
conveyance, a delivery and acceptance will be more readily
presumed than in the cases to which reference is made by
appellant's counsel."

In *Kingsbury* v. *Burnside et al., supra,* the court, after dis-
cussing the rule under consideration, say: " But that the
principle underlying it is, after all, assent, presumptive or
actual, on the part of the grantee." And, in all cases where
the deed, instead of conferring a benefit, imposes a burden or
duty, the law, in the absence of express assent or acceptance,
will not presume to that effect.

It is clear here, from all the evidence, that the purpose of
Campbell in making this deed was to put the property in
McEwen in trust for the family of the grantor. McEwen so
understood it, and Mrs. Campbell testifies that such was his
expressed purpose in making the deed.

Whether he intended to take an express declaration from
McEwen of the trust upon which he held the property, or to
rely upon his honor, can now only remain matter of con-
jecture. His design, doubtless by reason of his unfortunate
mental condition, was never consummated, whatever it may
have been. He failed to perfect the delivery, and McEwen,
never having had the deed either actually or constructively

delivered to him, could not, of course, accept it, and become bound legally or morally to execute the trusts it was designed for.

The fact that McEwen told Campbell that he might convey the lots to him can no more be construed an acceptance here than was the prior understanding that the deed was to be executed in *Jackson ex dem. Eames* v. *Phipps, supra.* At most it but indicated a willingness to accept, and, being gratuitous, it might subsequently be changed. It was but a promise of what *would be* done, not an acknowledgment of what had been done.

We think the court below properly found that the deed had not been delivered.

If it should be claimed that, notwithstanding all this, yet, since the deed was on record, as if duly delivered, when the insurance company loaned the money to Mrs. Campbell and took the deed of trust from her, and there was nothing to notify the company that the deed had not been delivered, the appellants should be estopped to deny that there was a delivery of the deed, it might be replied, without inquiring what force there would be in such a claim, that it is proved by the evidence of Mrs. Campbell that she notified the agent of the company, before any money was loaned or deed of trust was executed, that the property in fact belonged to appellee. This notice was in writing, signed by her, as she says, and might be regarded as a sufficient acknowledgment of the trust.

With regard to the cross-errors, we think it only necessary to say that the decree does equity to appellee. To the extent that his estate has been reasonably improved and he himself has been personally benefited from the money of appellants, it is right that his estate should be charged with its payment. This doctrine was applied in *Kinney et al.* v. *Knoebel et al.* 51 Ill. 114. Same case, again reported, after subsequent hearing in the circuit court, as *Smith et al.* v. *Knoebel et al.* 82 id. 392.

The decree below is, in all things, affirmed.

*Decree affirmed.*