WILLIAM KUNKLE *et al.* Plaintiffs in Error, *vs.* KATHERINE JOHNSON *et al.* Defendants in Error.

*Opinion filed June 24, 1915.*

1. DEEDS—*delivery essential to pass title.* Delivery is necessary to the complete execution of a deed so as to pass title, and the controlling element in determining whether there was delivery by the grantor and an acceptance by the grantee is the intention of the parties.

2. SAME—*no particular formula is required to constitute delivery.* The delivery of a deed may be either actual, by formal delivery, or by words which clearly manifest an intention that the deed shall presently become operative and effectual.

3. SAME—*what essential to delivery where no interest is reserved to grantor.* Where a deed to an adult grantee purports to convey the whole estate and no interest is reserved to the grantor, it is essential to a complete delivery that the grantor relinquish all control over the instrument.

4. SAME—*what does not preclude the evidence of non-delivery.* Evidence may be introduced to show that, as a matter of fact, there was no delivery of a deed although the acknowledgment uses the word "delivered" and there is a memorandum preceding the signature of the witnesses to the effect that the instrument was "signed, sealed and delivered" in their presence.

5. SAME—*what does not show a delivery.* Evidence that the grantor executed and acknowledged a deed to her son in the presence of witnesses and of the grantee, and that she handed the deed to the notary with directions to keep it in his safe, does not show a complete delivery, particularly where the grantor had on previous occasions made deeds for the same property which she left with the notary and subsequently recalled.

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. M. W. THOMPSON, Judge, presiding.

ACTON & ACTON, for plaintiffs in error.

JONES & BOOKWALTER, for defendants in error.

' Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiffs in error, grandchildren and heirs-at-law of Nancy J. Stokes and also heirs-at-law of Joseph C. Stokes, a deceased son of Nancy J. Stokes, filed their bill in the circuit court of Vermilion county for the partition of twenty acres of land, the title of which is not now in dispute, and also of forty-one and a half acres which Joseph C. Stokes had conveyed to the defendants in error, Katherine Johnson and W. H. Johnson, her husband, and John Stokes, asking the court to set aside the deeds of the same on the ground of want of mental capacity of Joseph C. Stokes and undue influence. John Stokes was a minor and answered by his guardian *ad litem,* and the other defendants answered, denying want of mental capacity and undue influence. The issues were referred to a special master in chancery to take and report the evidence, with his conclusions. After evidence had been taken on the issues made under the original bill, the bill was amended so as to charge that deeds of the land made by Nancy J. Stokes to Joseph C. Stokes were not delivered, so that he had no title to convey, and the charges of want of mental capacity and undue influence were abandoned. Evidence was taken under the amended bill on the question of the delivery of the deeds, and the special master reported the evidence, with his conclusion that there was no delivery, and he recommended a decree in accordance with the prayer of the amended bill. The court sustained exceptions to the master's report, and entered a decree finding that the deeds were delivered and ordering a partition accordingly and appointing commissioners for that purpose. A writ of error from this court has brought the record here for review.

Nancy J. Stokes made deeds of the lands on three different occasions, the history of which is as follows: All the deeds were prepared by H. L. Brown, a notary public, who kept a store in Humrick, in Vermilion county, and they were acknowledged before him. On the first occasion she had three living sons, Joseph C. Stokes, Henry Stokes and Edward Stokes, and she made and acknowledged a deed of the land to them and left it in the possession of the notary public, who kept it in his safe. Henry Stokes, one of the sons, died, and after his death she withdrew the deed to the three sons and made a deed to the two surviving sons, Joseph C. Stokes and Edward Stokes, and she left the deed with the notary public as before. Afterward Edward Stokes died, and after his death she made the deeds in question to Joseph C. Stokes, the surviving son, and took away the former deed to the two sons. There were two deeds to Joseph C. Stokes signed and acknowledged on September 18, 1909. One was a quit-claim deed in statutory form, dated August 17, 1909, in consideration of one dollar, conveying twenty-one and a half acres, and the other was a warranty deed in like form, dated September 18, 1909, in consideration of one dollar, conveying twenty acres. The deeds were witnessed by J. E. Gephart and Nellie F. Brown and were left in the possession of the notary public. Nancy J. Stokes died on January 10, 1913, and after her death the notary public delivered the deeds to Joseph C. Stokes and they were recorded on January 16, 1913. Joseph C. Stokes was not married, and he made two deeds, both dated February 3, 1913, one being a quit-claim to W. H. Johnson and Mary Johnson, his wife, of the twenty-one and a half acres, and the other a warranty deed to John Stokes, the minor, of the twenty-acre tract. Joseph C. Stokes died on February 28, 1913, and the deeds made by him were recorded on the day of his death.

The foregoing facts were not disputed, and the controversy related to what occurred when the deeds to Joseph C.

Stokes were signed and acknowledged, on September 18, 1909. The evidence consisted of the testimony of the two subscribing witnesses, J. E. Gephart and Nellie F. Brown, and the notary public, H. L. Brown. The notary public filled up the statutory forms on his typewriter, and when the deeds were signed he was standing behind the counter in his store and Nancy J. Stokes and Joseph C. Stokes were on the outside of the counter, in front of the show-case. J. E. Gephart testified that he was called up and signed the deeds as a witness at the request of the notary, and that Nancy J. Stokes handed the deeds across the counter and said to the notary, Brown, "Take these deeds and keep them," and that the deeds were not in the possession of Joseph C. Stokes in his presence. Nellie F. Brown, the step-mother of H. L. Brown, testified that she signed as a witness, standing at the show-case, at the request of her step-son; that Nancy J. Stokes gave the deeds to Brown, telling him to take care of them; to take them and put them in his safe, as she had no place to keep them,—as she had no safe that was fire-proof; and that the witness turned away to other persons and did not know what was done after that. H. L. Brown, the notary, testified that he prepared the deeds and returned to Nancy J. Stokes the former deed to the two sons; that after the deeds were signed and the acknowledgments taken and filled out Joseph C. Stokes read the deeds and the witness listened to the reading, after which Joseph C. Stokes handed them to him, saying that he had no safe place to keep them and to put them in his safe. His testimony was very greatly weakened, however, by the fact that at a previous time he had a different recollection, and that after he had given testimony on a former occasion, William Johnson, one of the defendants in error, said he had got him into trouble and would have to get him out. His final testimony was that to the best of his recollection it was Joseph C. Stokes who handed the deeds to him, but he was not positive of the

fact. There was evidence that Nancy J. Stokes afterwards said to different persons that she had made a deed to Joe for her land and she did not care who knew it, because at her death she intended to have him have what was left. Nancy J. Stokes and Joseph C. Stokes lived together on the premises and there was no apparent change of possession after the deeds were made.

Delivery is necessary to the complete execution of a deed so as to pass title, and the general rules as to what will constitute a delivery have been often stated. The controlling element in determining whether there was a delivery by the grantor and an acceptance by the grantee is the intention of the parties. The law prescribes no particular formula to be pursued in making a delivery, and it is not necessary that there should be an actual, physical transfer from the hand of the grantor to the grantee. The delivery may be either actual, by formal delivery, or by acts or words which clearly manifest an intention that the deed shall presently become operative and effectual, that the grantor loses control over it, and that by virtue of it the grantee becomes possessed of the estate. The grantor must relinquish all control over the instrument where, as in this case, it purports to convey the whole estate and no interest is reserved to the grantor, but in case of a voluntary settlement, and particularly in the case of a minor grantee, the presumption of the delivery of a deed is stronger than in case of bargain and sale. *Price* v. *Hudson,* 125 Ill. 284; *Miller* v. *Meers,* 155 id. 284; *Rodemeier* v. *Brown,* 169 id. 347; *Walter* v. *Way,* 170 id. 96; *Kavanaugh* v. *Kavanaugh,* 260 id. 179; *Linn* v. *Linn,* 261 id. 606; *Latshaw* v. *Latshaw,* 266 id. 44.

The evidence in this case did not meet the requirements of the law. It is not questioned that the deed to the three sons and the subsequent deed to the two sons were left with the notary, with the understanding that the grantor, Nancy J. Stokes, could reclaim them at any time, as she afterward

did. She did not intend that either of them should become presently operative and effectual to convey the estate. She did not understand that the title passed in either instance, as it would have done if they had been delivered, so that regaining possession of them would not have re-invested her with the title. We find nothing in the evidence to show that there was any change in the intention or understanding of the grantor when the deeds of September 18, 1909, were deposited with the notary because he had a safe and the grantor had not. There is nothing in the evidence tending to prove that the grantor had formed any different intention from the one she had entertained with respect to the former deeds, or that if Joseph C. Stokes had died she would not have considered herself authorized to make any other disposition of the property that she saw fit. One subscribing witness said that the deeds were not handed to the grantee in his presence, and the other said she did not see anything of that kind. The notary thought the grantee took the deeds and read them over while the notary listened and then handed them to him, but if his final recollection was correct it would not prove a delivery in view of the other facts and circumstances. What was said by the grantor to others shows that she did not consider that the title had passed but that the grantee was to have what was left at her death. Courts of review give much weight to the conclusion of the trial court as to questions of fact where the witnesses testify in open court, but in this case the conclusion was based on written evidence taken before the special master, and the court had no better opportunity to judge of its weight than we have.

It is argued that the signature of the witnesses below the words, "Signed, sealed and delivered in the presence of," is evidence of a delivery. If either the certificate of acknowledgment using the word "delivered" or the memorandum above the names of the witnesses, both of which are made before actual delivery, is to be regarded as evi-

dence of the fact, the evidence in this case satisfactorily shows that there was no delivery, and that may be done in any case, notwithstanding the acknowledgment and the memorandum. *Union Mutual Life Ins. Co.* v. *Campbell,* 95 Ill. 267; *Hawes* v. *Hawes,* 177 id. 409.

The decree is reversed and the cause is remanded to the circuit court, with directions to set aside the deeds to Joseph C. Stokes and decree partition among the heirs-at-law of Nancy J. Stokes.

*Reversed and remanded, with directions.*